BURROWS vs. BASHFORD, impleaded with others.

*Tax deed as evidence.*

One who took a tax deed prior to 1859 could not avail himself of the remedy provided by chap. 22, Laws of 1859 (as amended by chaps. 138 and 277, Laws of 1861), without subjecting himself to the disadvantages of that statute, in making his deed merely *prima facie* evidence of the regularity of the tax proceedings, and exposing his title to impeachment by proof of such irregularities as are usually held to invalidate tax sales.

APPEAL from the Circuit Court for *Dane* County.

Action by the holder of a tax deed, against *Bashford* as claiming the legal title under the person who owned the land at the time of the tax sale, and *Sheldon* as holder of a mortgage thereon, and certain " unknown " parties, as having or claiming some interest in the premises. The judgment prayed for is, that defendants, and all persons claiming under them after the commencement of this action, " may be forever barred from all right, title," etc., etc.; "that the title to said lands may be established and quieted

in plaintiff in fee simple; that the defendants may be adjudged to deliver possession thereof to the plaintiff;" and for general relief. The answer, among other things, alleged irregularities in the tax proceedings, rendering the sale void; and also alleged the making of the deposit required by chap. 22, Laws of 1859, and offered to pay such costs and disbursements as might be judged reasonable, etc.

At the trial, plaintiff admitted that no notice of the tax sale, and no notice to redeem, were published or posted as required by law, and that no affidavit of the publishing or posting of the notice of sale was ever deposited in the office of the clerk of the county supervisors; but he insisted that his deed could not be impeached by reason of such irregularities; and the circuit court, so holding, rendered judgment in his favor; from which the defendant appealed.

*Spooner & Lamb*, for appellant.

*H. W. & D. K. Tenney*, for respondent.

PAINE, J. Prior to 1859, the law in force made tax deeds conclusive evidence of the regularity of the proceedings, and they were only liable to impeachment by showing that the land was not liable to taxation, or that the taxes had been paid. The plaintiff was the owner of a tax title, the deed for which was issued under that law.

By chap. 22, Laws of 1859, a new policy was adopted with respect to tax deeds to be thereafter issued. A new remedy was devised, by which the owners of such deeds could bring an action to quiet their titles. They could make the former owners, and all persons claiming under them, parties (sec. 35); and if they could not ascertain the proper persons to make defendants, they could proceed against any persons as absent defendants, describing them as "unknown owners." Sec. 46. The judgment, if in favor of the plaintiff, would forever bar the defendants from

all right or title to the property; thus cutting off the right to a new trial, which the defendant would have by law if the plaintiff should bring an action of ejectment.  Sec. 44.

On devising this new remedy, so beneficial, in many respects, to the owners of tax titles, the legislature changed the rule making the tax deeds conclusive evidence of the regularity of the proceedings, and provided that they should be only *prima facie* evidence.  But as a condition to the right to set up any other defense than that the land was not liable to the tax, or that it had been paid, or that the deed was never executed by the officer whose name was subscribed to it, the defendant was required to deposit, for the use of the plaintiff, the whole sum for which the land was sold, and all subsequent taxes which plaintiff had paid, with twenty-five per cent. interest; which the plaintiff would be entitled to, if the defendant recovered judgment.  On making such deposit, the defendant was expressly authorized to set up any other defense that would " avoid the conveyance."   And there can be no doubt that this language in sec. 38 was designed to allow the defendant, on complying with those conditions, to avoid the deed by proving any of the irregularities which, by the general current of decisions, are held to defeat tax titles.

By sec. 2, chap. 138, Laws of 1861, as amended by chap. 277, Laws of 1861, the provisions of the act of 1859, from sec. 35 to 48 inclusive, are extended and made applicable to all prior tax sales and conveyances.

The plaintiff, owning a deed issued under the prior law, availed himself of the new privilege given by these acts, and brought this action for the purpose of quieting and establishing his title.   Counsel suggested, on the argument, that it was not certain that this action was brought under this law, and that it might be considered an action of ejectment.   But this suggestion hardly deserves a serious

answer. The complaint conforms literally to the provisions of the act of 1859. It sets out at length a copy of the deed. It proceeds against unknown owners, and against a mortgagee. There is no allegation that any of the defendants are in possession, or that they detain the land from the plaintiff. The prayer for judgment is for the precise judgment authorized by this act; and there can be no doubt that the action must be considered as brought by virtue of the law of 1859, and that, if the plaintiff recovers judgment, it will have all the force and effect of a judgment under that act.

The defendant complied with the provisions of the act in respect to making the deposit, and on the trial he offered to prove, and the plaintiff admitted, various irregularities in the tax proceedings, which are undoubtedly sufficient to avoid the conveyance, unless the plaintiff is protected against them by the conclusive effect given to his deed as evidence, by the law under which it was issued. He insists upon his deed as conclusive, and claims the right to avail himself of the advantages of this new remedy, without subjecting his deed to any of the conditions of the act, which would give it any less or different effect from what it would have by the law under which it was executed. It is claimed, however, on the other hand, that this act gives the owners of such tax deeds a new privilege, and that if they bring an action under it, asking for its benefits, they thereby subject themselves to its disadvantages, in accordance with the maxim *qui sentit commodum sentire debet et onus.* We think this conclusion correct.

Of the legislative intent there would seem no room for doubt. Those provisions before referred to, making the deeds offered in any action under that law, only *prima facie* evidence of title, and that the defendant may make the deposit, and, on making it, may set up any other defenses besides those specified, (which are the same that he might

have made to a conclusive deed before this law,) constitute such prominent and striking features in this new remedy, that it cannot be assumed that the legislature would have said that all those sections should be extended and made applicable to former deeds without any qualification, if at the same time they intended that these distinctive and important provisions should not be applicable at all.

The only remaining question, therefore, is, whether these provisions, as applied to such prior deeds, are unconstitutional. The plaintiff claims that they are, and that they impair the obligation of his contract. It may readily be conceded that the legislature could not make such provisions imperative as to such prior deeds, and apply them in actions to which the owner was previously entitled. This would impair the obligation of the contract, as this court has held in the cases cited by the plaintiff: *Robinson v. Howe*, 13 Wis., 341; *Smith v. Cleveland*, 17 id., 556. But whether they could not provide a new remedy, giving the owners of such deeds new rights and privileges which they did not before have, and declare that, as a condition to the enjoyment of these, the owners should subject their deeds to certain new defenses to which they would not otherwise have been subject, is an entirely different question. And we think they may well do this. In such a case no right of the owner is interfered with. If he chooses not to avail himself of the new remedy, he can resort to the old, and insist upon all his old rights without any change or diminution. It is entirely optional with him, whether he will resort to the new. But if he does, he takes it subject to its conditions. He must take its burdens as well as its benefits. He cannot adopt such parts as are beneficial to him, and reject the rest. Counsel argued that the plaintiff could well avail himself of all the benefits of this act, and yet object to any of its provisions that are unconstitutional.

This might well be as to any provisions that are absolutely unconstitutional, as used in this act. But the fallacy of this position consists in the assumption that these are so. They are not. It would only have been unconstitutional for the legislature to impose them on the plaintiff without his consent. It was not unconstitutional for them to say that he might voluntarily subject himself to them, as conditions to the enjoyment of a new advantage given by the act. And after he has given his consent, by bringing the action under the law and asking for the new advantage, it is too late to turn around and object to the conditions upon the ground that it was unconstitutional for the legislature to impose them on him without his assent. They did not do so—did not attempt to do so. They imposed them only with his consent, and he cannot, in the very action, the bringing of which gives his consent, be allowed to repudiate them. He cannot occupy a position both of consent and refusal at the same time.

It is a familiar rule that a party cannot be allowed to claim under, and at the same time repudiate, any instrument. Its most usual application is in the case of contracts and conveyances. But it is quite as applicable to that class of statutes which, like the present, without being imperative, grant new privileges, subject to certain conditions. It was so applied in *The People v. Murray*, 5 Hill, 468. That case was relied on in *Robinson v. Howe*, where we held its principle inapplicable, for the reason that the owner of the tax deed did not claim or ask any new right under the law to which he objected. His taking a deed merely in the form prescribed by it, was not such a claiming under it as precluded him from objecting to its provisions. But here, the case of *The People v. Murray* is directly applicable, and furnishes a striking illustration of the principle contended for. The legislature had authorized certain persons to erect

a dam, and provided that any person injured might have the damages assessed by a justice, and that his certificate should be conclusive. The same position was taken there that counsel have taken here. In answer to it, on page 472, the court said : " It was suggested on the argument that if the act made, or intended to make, the certificate of the justice conclusive upon the parties, the provision was unconstitutional, for the reason that it authorized a proceeding not according to the course of the common law, and deprived the parties of the right of trial by jury. The short answer is, that the defendants took the grant to build the dam with this condition attached to it; and they are not now at liberty to make the objection, though, under other circumstances, it might have been effectual. It was competent for them to waive the right of trial according to the common law, even if, without such waiver, they would be considered as entitled to it."

Other illustrations might be referred to, where parties are held to waive constitutional rights by asking for new privileges to which such waiver is attached as a condition. Thus a criminal who has been convicted, if he moves for and obtains a new trial, cannot be heard to object to being tried again on the ground that he cannot be twice put in jeopardy.

Our view of the character of this act is also confirmed by the decision of the supreme court of the United States in *Van Allen v. The Assessors*, 3 Wall., 573. The court there held the provision of the National Banking Act, subjecting federal bonds to state taxation when used as a basis for banking, valid, notwithstanding the bonds had been issued under a law exempting them from state taxation. And they put it upon the ground that the act conferred new rights and privileges upon the bondholders, and that the tax was the condition to those new rights and privileges.

True, it was not claimed there that the act was unconstitutional, because there is no provision prohibiting Congress from passing a law impairing the obligation of contracts. But it was claimed that it was a violation of the plighted faith of the government. And the court held that it was not, for the reason above stated. And it is obvious that the same reasoning shows that it was not a law impairing the obligation of contracts.

We are of the opinion, therefore, that the plaintiff, by bringing this action, voluntarily waived all rights inconsistent with the provisions of this act, and subjected himself to all its conditions. And the irregularities admitted being such as should avoid the deed, the defendants were entitled to judgment in pursuance of the provisions of sec. 45 of the act.

The judgment must therefore be reversed, and the cause remanded with directions to enter such judgment for the defendants.

*By the Court.*—Ordered accordingly.