## GEORGE W. LAWRENCE

### *v.*

## JULIA S. LAWRENCE.

73  577
24a 559
73  577
135 116
73  577
51a 264

1. CHANCERY—*decree of divorce against non-resident, etc., may be opened.* The provision in the chancery code allowing a final decree against a defendant without notice other than by publication, to be opened within three years, and a defense to be interposed, applies to a decree of divorce as well as to any other.

2. DECREE—*effect of, against one having constructive notice only.* A decree of divorce against one notified by publication only, and who does not

appear, is not absolute until three years after it is entered, but conditional, and subject to be set aside, even though the complainant may have married before it is set aside. Persons acquiring rights under such a decree can not be protected against the effect of its being set aside in the three years.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The appellant, George W. Lawrence, on the 27th day of August, 1872, filed, in the Superior Court of Cook county, a bill against the appellee, Julia A. Lawrence, for a divorce. She being a non-resident, notice was given by publication, as required by the statute in such cases.

At the October term, 1872, of said court, proof of publication of notice was made, the defendant defaulted, the bill taken for confessed, and a reference made to the master to take proofs. On the coming in of the master's report, the cause was heard thereon, and a decree of divorce entered in favor of the complainant.

At the May term, 1873, of that court, the defendant, Julia A. Lawrence, filed her petition under section 19 of the Chancery Practice Act, setting forth that she had not been served with notice of the divorce suit, but was brought into court by publication of notice only, and asking leave to appear and answer the complainant's bill therein. The petition was granted, and the defendant filed her answer denying the allegations of the bill, except that of marriage.

On the 10th day of July thereafter, the said petition was served upon the complainant, who appeared and moved the court to strike the defendant's petition and answer from the files, and vacate the order allowing the same to be filed, the motion being based upon affidavits filed showing that subsequent to the decree of divorce, and before notice of any application to appear and answer the bill, the complainant had married again. This motion the court overruled. The cause afterward came on for hearing and trial by a jury (the statute requiring the trial to be by a jury), and resulted in a verdict for defendant, and a decree setting aside the decree of divorce

and dismissing the complainant's bill.   The complainant appealed.

Messrs. WILKINSON, SACKETT & BEAN, for the appellant.

Messrs. GRANT & SWIFT, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is admitted by the appellant that the evidence on the part of the defendant on the hearing below was sufficient to sustain the verdict.   Evidence there offered by the complainant of the second marriage was excluded and exception taken.

The only ground of error which is urged in argument by appellant is, the order of the court below allowing the defendant to appear and answer in the suit, and contest the same after a decree of divorce had been entered, and taking the subsequent proceedings; and the only question involved is one of statutory construction.

The 19th section of our Chancery Practice Act provides that, when a final decree shall be entered against any defendant without notice other than by publication of notice in a newspaper (as was the case here), and such defendant, his heirs, devisees, executors, administrators or other legal representatives shall, within three years after such decree, appear in open court and petition to be heard touching the matter of the decree, and shall pay such costs as the court shall deem reasonable in that behalf, the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendant had appeared in due season, and no decree had been made.   And if it shall appear, upon the hearing, that such decree ought not to have been made against such defendant, the same may be set aside, altered or amended as shall appear just, otherwise the same shall be ordered to stand confirmed against said defendant.   The decree shall, after three years from the making thereof, if not set aside in manner aforesaid, be deemed and adjudged confirmed against such defendant, etc., and at the end of the said three years, the

court may make such further order in the premises as shall be required to carry the same into effect.

Another section of the statute provides that, in the case of a non-resident defendant, a copy of the bill, together with a notice of the commencement of the suit, may be delivered to such a defendant, which service shall be as effectual as that made in the usual form, within the limits of this State.

It is claimed that a decree of divorce does not come within this provision.

Section 2 of chapter entitled "Divorces," when these proceedings were had, provided: "The circuit court, sitting as a court of chancery, shall have jurisdiction in all cases of divorce and alimony by this chapter allowed; and the like process, practice and proceedings shall be had as are usually had in other cases in chancery, except as hereinafter provided."

Stress is laid by appellant upon the particular terms here used, "usually had," as implying that the usual practice in chancery cases in general was meant, and not this provision in our Chancery Practice Act, which is unknown in the usual practice of chancery courts. But we apprehend there is to be no special significance attached to the terms "usually had," as here employed, and that they mean no more than that the usual practice and proceedings in cases in chancery in this State are to be had, and that whatever of such practice or proceedings is prescribed and regulated by statute, is a usual practice or proceeding in such cases.

The words, "heirs, devisees, executors, administrators or other legal representatives," used in the Chancery Act as descriptive of the persons who may have opened such final decree, are adverted to as being entirely inapplicable to a decree of divorce, and so denoting that such a decree could not be embraced in the provision.

But property interests of a greater or less extent may be involved in a decree of divorce, and persons of the above description may be materially interested in having a decree of divorce, to which a person since deceased was a party, set aside.

If there were no interest of property concerned, it might be

a question for the court, how far the disturbing of such a decree, at the instance of such a person, would be just.

The "Divorce" chapter contains no independent provision for bringing a defendant into court. It was only under the provisions of the Chancery Act that appellant was enabled to subject appellee to his suit, by the publication of notice in a newspaper. If appellant had to resort to the provisions of that act in order to be able to institute and prosecute his suit, it would seem that appellee should be equally entitled to the benefit of the provisions of the same act to defend against the suit.

We fail to see why a decree of divorce does not come within the section of the Chancery Act above referred to for the opening of decrees, and why it is not brought within it by the express terms of the second section of the chapter entitled "Divorce."

The decree of divorce was not an absolute one, upon the faith of which third persons were entitled to rely, and acquire rights under it, as a final decree of court. It was but provisional, and interlocutory, subject to be set aside upon the defendant coming in at any time within three years, and defending against the suit. By the statute, it was not to be deemed confirmed against the defendant until after the expiration of three years.

Persons acting in view of the decree, and seeking to acquire rights under it, would do so, knowing its provisional, conditional character, and that it was subject to be made naught, upon coming in within three years and making defense to the suit. For although upon its face the decree is absolute, it was made otherwise by the statute, and persons dealing upon the faith of the decree, must be presumed to have knowledge of the statute, and were bound to regard the decree and statute in connection with each other, which would make the statute a part of the decree as much so as if the provision of the statute in question had been incorporated in the decree.

Persons, then, acting under such a decree, are not entitled to the protection of the court as acquiring rights in good faith

in reliance upon a decree of court. They were not entitled to rely upon it as absolute, and so knew, or must be held to know, so far as concerns the rights of the defendant; and they relied upon the decree at their peril. *Lyon et al.* v. *Robbins,* 46 Ill. 276; *Southern Bank of St. Louis* v. *Humphreys,* 47 id. 227.

Were the exercise of only the discretionary power of the court involved, the consideration of the second marriage, and that the interests resulting thereunder have become involved, would be one of just weight in determining whether the decree should be disturbed. But it is no matter of discretion. It is a statutory right which a defendant in such case has, to come in and defend, upon payment of costs.

Appellee has but asserted and vindicated her just rights in the mode given to her by the statute. If inconvenience and harm shall result to any one acting upon such a decree as a valid and final one, it is a consequence which we may regret should have ensued, but, legally, it must be regarded as one which is imputable to the party's own fault, and as growing out of a disregard of the just rights of the appellee. There is a way of avoiding all such harmful effect, and having the decree absolute in the first instance, by following the course provided for by the statute, of delivering to the non-resident defendant a copy of the bill, with a notice of the commencement of the suit.

We are of opinion the decree should be affirmed.

*Decree affirmed.*

Mr. JUSTICE BREESE: I do not concur in this opinion. I do not think the 19th section of the Chancery Act has any application to divorce cases. Those cases are governed by the Divorce Law, and are *sui generis.* I think further, that public policy requires decrees in such cases should be absolute and final, unless an appeal be prosecuted.

Mr. CHIEF JUSTICE WALKER: I do not think the 19th section of the Chancery Act applies in this class of cases.

Mr. JUSTICE SCOTT: I can not concur in this decision. While it may be true the 19th section of the statute is appli-

cable to divorce cases, under the authority "to set aside, alter or amend" the decree "as shall appear just," I am of opinion it is, to some extent, within the discretion of the court what alterations shall be made in the decree, and that considerations of public policy forbid its exercise where there has been a second marriage. The consequences to the second wife would be very serious indeed. She might be actually innocent, and at most would only be constructively guilty of wrongful conduct. The effect would be to bastardize their children, if any, and expose the parties to the charge of living in an open state of adultery. Regarding the 19th section as applicable to divorce cases, no doubt it would be within the jurisdiction of the court to alter or amend the original decree, so far as it affects property rights, "as shall appear just."